UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

EDWARD LEBRON GRIFFIN,

                Plaintiff,

v.

BHAMINI SUDHIR et al.,

                Defendants.

_____/

Case No. 2:25-cv-198

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.15.)

This case is presently before this Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF staff in their individual and official capacities: Physician Bhamini Sudhir, Physician Assistant Matthew Lefevre, Health Unit Supervisor Jaimes Monvillis, Health Unit Manager Aaron Jeffery, Registered Nurse Katherine West, and Registered Nurse Trisha Happala. (Compl., ECF No. 1, PageID.1–3.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff states that he wears "corrective eyewear."[2] (*Id.*, PageID.5.) In 2020, while incarcerated at the Carson City Correctional Facility, "Plaintiff broke his glasses in an altercation." (*Id.*) At some point after this, Plaintiff was transferred to AMF in 2020. (*Id.*) Plaintiff was then housed at a number of different correctional facilities between 2020 and 2024. (*Id.*) Plaintiff states that during this four-year period at these various correctional facilities, Plaintiff was not "seen by optometry." (*Id.*, PageID.5–6.)[3]

Plaintiff returned to AMF on October 17, 2024. (*Id.*, PageID.6.) Several days later, on October 21, 2024, Plaintiff sent a kite to healthcare, stating that he had "been having blinding headaches without [his] glasses" and that he had "extreme light sensitivity." (*Id.*) Plaintiff also stated that he had been submitting kites for the past year while he was incarcerated at different correctional facilities asking "to be seen," but that he had not had an optometry appointment. (*Id.*)

Non-party Tyler Kangas[4] responded to Plaintiff's kite, stating: "You have previously kited similar to this, and the optometrist responded, 'you are on the waiting list—there are roughly 200 other guys also waiting—you must patiently wait your turn.'" (*Id.*) "Nursing gave [Plaintiff] a handful of ibuprofen," which Plaintiff claims "did nothing for [him]." (*Id.*) Plaintiff states that "the pain was almost a complete constant in [his] day." (*Id.*)

---

[2] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's complaint.

[3] It appears that Plaintiff provides the information about the events that occurred prior to his incarceration at AMF in 2024 to provide background information for his claims against the named Defendants in this action. If Plaintiff had intended to hold the named Defendants liable for the events that occurred prior to his interactions with them in 2024, Plaintiff would fail to state any such claim regarding the pre-2024 events.

[4] In the body of Plaintiff's complaint, he identifies Tyler Kangas as a Defendant; however, Plaintiff does not list Mr. Kangas as a Defendant in the case caption or in his list of Defendants. Under these circumstances, Plaintiff has not properly identified Mr. Kangas as a Defendant, and as such, the Court considers Mr. Kangas to be a non-party to this action.

Four days later, on October 25, 2024, Plaintiff sent another kite to healthcare, requesting "his eyeglass prescription" so he could "try and have [his] family order [his] glasses for [him]." (*Id.*) In response, "healthcare" advised that Plaintiff was "on the schedule for an eye exam" and that "until then, we don't have a current eye prescription to send." (*Id.*, PageID.7.) Plaintiff later learned "that outside parties could no longer purchase eyeglasses for prisoners." (*Id.*)

Subsequently, on March 15, 2025, Plaintiff filed a grievance regarding the lack of "treatment by medical or an eye exam." (*Id.*) Defendants Monvillis and Jeffery responded to Plaintiff's step I grievance, denying Plaintiff "an interview" and informing him that AMF had "been without an optometrist for the last many months." (*Id.*; Grievance Resp., ECF Nos. 1-2, 1-3.) Thereafter, Defendant West denied Plaintiff's step II grievance about the matter, stating that "most MDOC facilities obtain optometry services from visiting optometrists. The frequency of these visits, and the number of appointments available at each, dictates how rapidly patients may be seen. . . ." (Grievance Resp., ECF No. 1-10, PageID.30; *see* Compl., ECF No. 1, PageID.7.)

"Between the months of March/May, Plaintiff was seen by" Defendant Sudhir. (Compl., ECF No. 1, PageID.7.) Plaintiff alleges that Defendant Sudhir "acknowledged that Plaintiff's complaints and symptoms were serious enough to be treated and w[ere] most likely attributed to not having [his] glasses." (*Id.*) Defendant Sudhir informed Plaintiff that she would schedule Plaintiff for an appointment with the optometrist. (*Id.*) Plaintiff told Defendant Sudhir that "he had been given Tylenol before and that the headaches and nausea w[ere] so bad that he doubted the Tylenol would work." (*Id.*, PageID.8.) Plaintiff states that "he is hearing impaired," and "partially because of" Defendant Sudhir's "accent due to her ethnicity, but mostly because there was no attempt made to ensure so, communication was not effective." (*Id.*)

On May 5, 2025, Plaintiff sent a kite to "medical/optometry," "requesting to be seen by optometry again, citing the headaches as well." (*Id.*) "Plaintiff received a response saying 'you have previously been scheduled with optometry and will be called out in order.'" (*Id.*) The following day, May 6, 2025, Plaintiff woke up "with eyesight so poor h[e] thought his eyesight was gone," and "the pain was excruciating." (*Id.*) Approximately an hour later, his "vision returned but only partially." (*Id.*) Plaintiff sent a kite to medical about the matter. (*Id.*) In response, Plaintiff was advised that he was "already scheduled with optometry" and that he was now scheduled to see a nurse regarding the headaches. (*Id.*) That same day, May 6, 2025, Plaintiff filed a grievance about the matter. (*Id.*, PageID.9.)

"A few days later," Defendant Happala came to Plaintiff's cell "during breakfast with no notice." (*Id.*) Plaintiff states that he was "just waking up [and] did not have his hearing aids in." (*Id.*) Plaintiff claims that Defendant Happala "made no attempt to establish effective communication," and Plaintiff states "this is pertinent because this encounter/interview was used to satisfy the Plaintiff's grievance interview for the grievance filed on May 6, 2025." (*Id.*)

The next day, May 7, 2025, Plaintiff was seen by non-party Nurse Skinner, who scheduled Plaintiff for an appointment with Defendant Lefevre. (*Id.*) At Plaintiff's appointment with Defendant Lefevre, Lefevre "agreed that the Plaintiff's condition was serious enough to treat" and thought that "Plaintiff's condition may be attributed to 'corrective lens' and promised a referral to optometry." (*Id.*) Defendant Lefevre placed Plaintiff on "Naproxen and Imitrex for the headaches, as the Tylenol was ineffective." (*Id.*, PageID.10.)

On May 27, 2025, Plaintiff sent a kite to healthcare, informing them that "the Imitrex was only marginally better, but the Naproxen was giving [Plaintiff] chest pains." (*Id.*) On May 30, 2025, Plaintiff was released from his cell without receiving any prior notice. (*Id.*) Plaintiff went to

6

the officers' station to see why he had been released from his cell, and non-party Officer Beck told Plaintiff that he had to go to his healthcare "call-out now," or Plaintiff "would be denied." (*Id.*) "Plaintiff went to the call-out, even though [he] was not dressed for it—nor did [Plaintiff] have [his] hearing aids in." (*Id.*) Plaintiff was seen by non-party Nurse Nurmi. (*Id.*) Plaintiff claims that non-party Nurse Nurmi "was extremely unprofessional," and "she mocked [his] disability by making mimed hand gestures that w[ere] not American Sign Language, saying 'can you hearing me?'" (*Id.*) Plaintiff filed a grievance about this appointment. (*Id.*)

Plaintiff states that "at the filing of this complaint," he "still ha[d] not been seen by optometry," "the Naproxen [was] discontinued, and [he] fears a long road ahead as far as pain management." (*Id.*)

Based on the foregoing allegations, Plaintiff brings the following claims under 42 U.S.C. § 1983: Eighth Amendment deliberate indifference claims, Fourteenth Amendment due process claims, and claims regarding the violation of the MDOC's policies. (*See id.*, PageID.4, 12–14.) Without providing any further explanation, Plaintiff also references the ADA and the RA.[5] (*Id.*, PageID.4.) Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. (*Id.*, PageID.16–17.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

---

[5] In Plaintiff's complaint, he specifically references the above-listed claims under Section 1983, and he specifically references the ADA and the RA. Because Plaintiff specifically identifies the claims that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any further claims.

7

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

## A.   Non-Parties Referenced in the Complaint

In Plaintiff's complaint, he describes the actions of non-parties at AMF and non-parties at other correctional facilities. (*See generally* Compl., ECF No. 1.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *report and recommendation adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022)

8

(concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-party individuals or groups of individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

### B.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Eighth Amendment Claims

Plaintiff alleges that Defendants violated his Eighth Amendment rights as related to his requests to see an optometrist for glasses and the severe headaches and vision loss that Plaintiff alleges occurred due to his lack of glasses. (*See* Compl., ECF No. 1, PageID.12–13.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

As to the objective component, Plaintiff's need for glasses on its own is not necessarily a serious medical need that would satisfy the objective component. However, because Plaintiff alleges that he suffers from severe headaches and pain, as well as vision loss, which Plaintiff

attributes to his lack of glasses, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has satisfied the objective component of the relevant two-prong test.

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against Defendants below.

### a.    Defendants Sudhir, Lefevre, and Happala

With respect to Defendants Sudhir, Lefevre, and Happala, Plaintiff had appointments with each of these medical providers. At Plaintiff's appointment with Defendant Sudhir, Defendant Sudhir "acknowledged that Plaintiff's complaints and symptoms were serious enough to be treated and w[ere] most likely attributed to not having [his] glasses." (Compl., ECF No. 1, PageID.7.) Defendant Sudhir informed Plaintiff that she would schedule Plaintiff for an appointment with the optometrist. (*Id.*) Similarly, at Plaintiff's appointment with Defendant Lefevre, Lefevre "agreed that the Plaintiff's condition was serious enough to treat" and thought that "Plaintiff's condition may be attributed to 'corrective lens' and promised a referral to optometry." (*Id.*, PageID.9.) Defendant Lefevre placed Plaintiff on "Naproxen and Imitrex for the headaches, as the Tylenol was ineffective." (*Id.*, PageID.10.) Finally, as to Defendant Happala, Plaintiff alleges that Happala came to Plaintiff's cell "during breakfast with no notice." (*Id.*, PageID.9.) Plaintiff states that he was "just waking up [and] did not have his hearing aids in," and Plaintiff claims that Defendant Happala "made no attempt to establish effective communication." (*Id.*) Plaintiff alleges no further facts about his interaction with Defendant Happala.

As to Defendants Sudhir and Lefevre, Plaintiff's allegations show that these Defendants provided medical care to Plaintiff at scheduled appointments, and during the medical

appointments, they were responsive to Plaintiff's medical concerns. Although Plaintiff was dissatisfied with the medical treatment that he received from these Defendants, Plaintiff's disagreement with Defendants' medical treatment is insufficient to state a deliberate indifference claim. *See, e.g.*, *Darrah*, 865 F.3d at 372.

Similarly, as to Defendant Happala, Plaintiff alleges insufficient facts to show that Happala disregarded Plaintiff's serious medical needs. Instead, Plaintiff's allegations show that Defendant Happala came to Plaintiff's cell in response to one of Plaintiff's grievances about his lack of eye-related medical care. And when Defendant Happala was at Plaintiff's cell, Plaintiff appears to have chosen not to put in his hearing aids in order to facilitate communication with Defendant Happala. Plaintiff's failure to put in his hearing aids to facilitate communication does not show that Defendant Happala acted with deliberate indifference.

Accordingly, for these reasons, Plaintiff has failed to show that Defendants Sudhir, Lefevre, and Happala were deliberately indifferent to Plaintiff's serious medical needs. Therefore, Plaintiff's Eighth Amendment claims against Defendants Sudhir, Lefevre, and Happala will be dismissed for failure to state a claim.

### b.      Defendants Monvillis, Jeffery, and West

With respect to Defendants Monvillis, Jeffery, and West, Plaintiff alleges that on March 15, 2025, he filed a grievance regarding the lack of "treatment by medical or an eye exam." (Compl., ECF No. 1, PageID.7.) Defendants Monvillis and Jeffery responded to Plaintiff's step I grievance, denying Plaintiff "an interview" and informing him that AMF had "been without an optometrist for the last many months. (*Id.*; Grievance Resp., ECF Nos. 1-2, 1-3.) Defendant West denied Plaintiff's step II grievance about the matter, stating that "most MDOC facilities obtain optometry services from visiting optometrists. The frequency of these visits, and the number of

13

appointments available at each, dictates how rapidly patients may be seen. . . ." (ECF No. 1-1, PageID.30; *see* Compl., ECF No. 1, PageID.7.)

Although Section 1983 liability ordinarily may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance, *see Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), the Court concludes that Plaintiff's allegations regarding Defendants Monvillis, Jeffery, and West's awareness of the limited optometry-related medical care at AMF and awareness of Plaintiff's specific need for optometry-related medical care are sufficient to preclude dismissal on preliminary review.

### 2.     Fourteenth Amendment Due Process Claims

Plaintiff states that he brings Fourteenth Amendment claims against Defendants, alleging that they denied him due process as related to his use of the grievance process at AMF as a hearing-impaired inmate. (*See* Compl., ECF No. 1, PageID.13.)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, Defendants'

14

responses to Plaintiff's grievances and any alleged interference with the grievance process did not deprive Plaintiff of due process.[6]

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding his use of the grievance procedure at AMF will be dismissed for failure to state a claim.

### 3.    Claims Regarding the Violation of the MDOC's Policies

Plaintiff claims that Defendants violated the MDOC's policies as related to the grievance process for hearing impaired inmates. (*See, e.g.*, Compl., ECF No. 1, PageID.9, 14.) The Court construes this allegation to raise a claim under Section 1983 regarding the violation of MDOC policy.

As an initial matter, claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th

---

[6] Moreover, the Court notes that the First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated the MDOC's policies fail to state a claim under Section 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated MDOC policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's Section 1983 claims regarding alleged violations of the MDOC's policies will be dismissed for failure to state a claim.

### C.    ADA and RA Claims

Plaintiff claims that Defendants violated his rights under the ADA and RA. (*See* Compl., ECF No. 1, PageID.4.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

16

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2–3.) Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA claims, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts regarding his hearing impairment to show that he has a

disability pursuant to the ADA and the RA. However, as explained below, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability.

Here, as relevant to Plaintiff's ADA and RA claims, Plaintiff alleges that between March and May of 2025, he was seen by Defendant Sudhir for at least one medical appointment. (Compl., ECF No. 1, PageID.7.) Plaintiff alleges that Defendant Sudhir "acknowledged that Plaintiff's complaints and symptoms were serious enough to be treated and w[ere] most likely attributed to not having [his] glasses," Defendant Sudhir informed Plaintiff that she would schedule Plaintiff for an appointment with the optometrist. (*Id.*) Plaintiff claims that "partially because of" Defendant Sudhir's "accent due to her ethnicity, but mostly because there was no attempt made to ensure so, communication was not effective." (*Id.*, PageID.8.) Further, Plaintiff alleges that in May of 2025, Defendant Happala came to Plaintiff's cell "during breakfast with no notice." (*Id.*, PageID.9.) Plaintiff states that he was "just waking up [and] did not have his hearing aids in." (*Id.*) Plaintiff claims that Defendant Happala "made no attempt to establish effective communication." (*Id.*) Finally, Plaintiff claims that on May 30, 2025, Plaintiff was released from his cell without receiving any prior notice, and when Plaintiff went to the officers' station to see why he had been released from his cell, non-party Officer Beck told Plaintiff that he had to go to his healthcare "call-out now" or Plaintiff "would be denied." (*Id.*, PageID.10.) "Plaintiff went to the call-out, even though [he] was not dressed for it—nor did [Plaintiff] have [his] hearing aids in." (*Id.*) Plaintiff claims that at the appointment, non-party Nurse Nurmi "was extremely unprofessional," and "she mocked [his] disability by making mimed hand gestures that w[ere] not American Sign Language, saying 'can you hearing me?'" (*Id.*)

With respect to Plaintiff's interactions with Defendant Happala and non-party Nurse Nurmi, Plaintiff's allegations show that Plaintiff was not wearing his hearing aids during those interactions, but he does not suggest that any defendant prevented him from wearing his hearing aids. Although Plaintiff's failure to wear his hearing aids may have hindered his communication with Defendant Happala and this non-party individual, these allegations do not show that the named Defendants excluded him from a service or program, denied accommodation, or discriminated against him due to his disability. Similarly, although Plaintiff claims in a conclusory manner that he had ineffective communication with Defendant Sudhir, the only facts alleged by Plaintiff show that he believed the communication was ineffective due to Sudhir's accent; Plaintiff alleges no facts to suggest that Defendant Sudhir excluded him from a service or program, denied accommodation, or discriminated against him due to his disability.

In summary, Plaintiff's conclusory allegations, which are unsupported by any facts, do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability. Accordingly, for these reasons, Plaintiff fails to state a claim under the ADA and the RA, and his ADA and RA claims will be dismissed.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Sudhir, Lefevre, and Happala will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, any intended claims against the non-parties discussed in the complaint. Further, the following claims against remaining Defendants Monvillis, Jeffery, and West will be dismissed for failure to state a claim: Fourteenth Amendment due process claims, Section 1983 claims regarding the violation of the MDOC's

19

policies, and ADA and RA claims. Plaintiff's Eighth Amendment claims against Defendants Monvillis, Jeffery, and West regarding Plaintiff's eye-related medical treatment remain in the case.

An order consistent with this opinion will be entered.


Dated:    October 1, 2025                      /s/ Sally J. Berens
                                               SALLY J. BERENS
                                               United States Magistrate Judge